IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS M. TORRES,<br><br>        Plaintiff,<br><br>  v.<br><br>R. KIRKLAND, et al.,<br><br>        Defendants.<br>_____ | No. C 06-4192 MMC (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**(Docket Nos. 27, 40 & 42)** |

On July 7, 2006, plaintiff, a California prisoner incarcerated at Pelican Bay State Prison ("PBSP") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. On May 10, 2007, the Court ordered plaintiff's amended complaint ("AC") served on various PBSP and California Department of Corrections and Rehabilitation ("CDCR") officials alleged to be responsible for violating plaintiff's constitutional rights with respect to plaintiff's indefinite retention in the PBSP Security Housing Unit ("SHU").

On September 24, 2007, defendants W. Barlow, Robert A. Horel, T. McCarthy, James Tilton, and L. Williams filed a motion to dismiss the AC pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground plaintiff had failed to exhaust his administrative remedies. Plaintiff thereafter filed opposition,[1] defendants filed a reply, and

---

[1] Together with his opposition, plaintiff filed a "Motion to Set Time Limitations for Objections," in which he asks that a schedule be set for the filing of objections to the magistrate judge's report and recommendation in this matter. (Docket No. 40.) The motion will be denied, as this action is not assigned to a magistrate judge for decision.

plaintiff filed a sur-reply.[2] For the reasons stated below, the Court will grant the motion to dismiss.

## FACTUAL BACKGROUND

The AC concerns events that occurred in 2005 and 2006 at PBSP. In September 2005, plaintiff was serving the final months of two determinate terms of confinement in the SHU, resulting from two separate disciplinary findings of guilt for assaulting an inmate. (AC Ex. "Appeal #1" at 6.) On September 9, 2005, plaintiff was issued a "114-D Administrative Segregation Unit Placement Notice," informing him that he was scheduled to appear before the Institutional Classification Committee ("ICC") to determine his future housing and program requirements. (AC at 12, Ex. "Appeal #2" at 5.) On September 14, 2005, the ICC held a hearing at which it reviewed plaintiff's classification status. (AC Ex. "Appeal #1" at 6.) The ICC decided to retain plaintiff in the SHU for an indeterminate period based on his disciplinary and cumulative case factors. (Id.) On March 28, 2006, the ICC held another hearing at which it again reviewed plaintiff's classification status. (AC at 13, Ex. "Appeal #6" at 5.) The ICC decided to continue to retain plaintiff in the SHU for an indeterminate period based on findings that plaintiff "has proven to be a threat to the security of the institution." (Id.)

Plaintiff claims his Fourteenth Amendment right to due process was violated by procedural deficiencies related to both the September 14, 2005 and March 28, 2006 ICC hearings. He further claims his detention in the SHU for an indeterminate period amounts to cruel and unusual punishment in violation of the Eighth Amendment. He seeks damages, declaratory relief, and injunctive relief in the form of release back to the general population.[3]

---

[2] On June 30, 2008, defendant R. Kirkland moved to join the motion to dismiss; the motion to join will be granted. (Docket No. 42.)

[3] When plaintiff filed his original complaint in this matter on July 7, 2006, he was housed in the SHU. By the time he filed the AC on February 20, 2007, however, he had been released back into the general population, where he currently resides. (MTD at 4:11-12.) Accordingly, plaintiff's claim for injunctive relief is hereby DISMISSED as moot. See Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996) (holding where injunctive relief is involved, questions of mootness are determined in light of present circumstances).

2

**DISCUSSION**

A.  Standard of Review

Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion. Id. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[4] If the court concludes the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the complaint without prejudice. Id. at 1120.

B.  The Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 ("CCR"),

---

[4] If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust, the court must give the prisoner fair notice of his opportunity to develop the record. Id. at 1120 n.14. Plaintiff was given such notice by the Court in the Order of Service.

§ 3084.1(a).[5] In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal level appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("Director"). See CCR § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38.

The exhaustion requirement cannot be satisfied by the filing of an untimely or otherwise procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 84. Rather, "proper exhaustion" of available administrative remedies is required. Id. at 92. The requirements of the prison's grievance process, not the PLRA, define the boundaries of proper exhaustion. Jones v. Bock, 127 S. Ct. 910, 923 (2007).

An action must be dismissed unless the prisoner first exhausted his available administrative remedies before he filed suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

C.  Analysis

Defendants argue plaintiff did not exhaust his administrative remedies because he did not receive a decision from the Director's level of review with respect to any of the claims he raises in the AC.

In support of their argument, defendants submit a declaration by N. Grannis ("Grannis"), Chief of the Inmate Appeals Branch ("IAB") at the CDCR. According to Grannis, the IAB keeps an electronic database containing information about each inmate administrative appeal that has been addressed at the Director's level of review. (Decl. N. Grannis Supp. Mot. Dismiss ("Grannis Decl.") ¶ 2.) Grannis has attached to his declaration the IAB computer printout of a report showing each inmate appeal filed by plaintiff at the Director's level of review between November 18, 2003, when plaintiff arrived at PBSP, and

---

[5] Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

4

September 20, 2007.  (Id. ¶ 3 & Ex. A.)  The report lists which of plaintiff's appeals were addressed at the Director's level of review and which appeals were "screened out," i.e., rejected for procedural reasons, at the Director's level of review.  (Id.)

Additionally, defendants submit a declaration by D.W. Bradbury ("Bradbury"), an Appeals Coordinator at PBSP.  As part of his duties, Bradbury monitors the computer database in the PBSP inmate appeals office.  (Decl. Bradbury Supp. Mot. Dismiss ("Bradbury Decl.") ¶ 1.)  The computer database tracks, by log number, all inmate appeals that are filed at PBSP and proceed past the informal level of review.  (Id. ¶ 4.)  Bradbury has attached to his declaration a printout from the computer database showing all appeals filed by plaintiff at PBSP between October 14, 2004, the date on which plaintiff was first assigned to the SHU to serve a determinate term therein, and July 7, 2006, the date on which plaintiff filed the original complaint in the instant action.  (MTD at 5:3-4; Bradbury Decl. Ex. A.)

The reports attached to the declarations of Grannis and Bradbury show the following. From November 18, 2003, when plaintiff arrived at PBSP, until July 7, 2006, the date on which plaintiff filed his original complaint herein, only one of plaintiff's appeals, Appeal #PBSP-D-05-02389, was addressed on the merits at the Director's level of review. (Bradbury Decl. ¶ 9, Ex. B; Grannis Decl. Ex. A.)  That appeal concerned the validity of a Confidential Informant Disclosure form, and did not address matters at issue in the instant action.  (Id.)  During the same time period, two appeals were screened out for procedural reasons at the Director's level of review; only one of those appeals concerned matters raised by plaintiff in the instant action with respect to his indeterminate SHU classification.  That appeal, Appeal #PBSP-D-05-02782, had been denied at the second level of review on the merits, but subsequently was screened out as untimely at the Director's level of review. (Bradbury Decl. ¶ 10, Ex. A; Grannis Decl. ¶ 5, Ex. A.)  One other appeal filed by plaintiff with respect to the claims in the instant action proceeded past the informal level of review. That appeal, Appeal #PBSP-D-06-00394, did not, however, advance beyond the first formal level of review.  (Bradbury Decl. ¶ 10, Ex. C.)

In opposition to the motion to dismiss, plaintiff does not dispute respondent's showing

5

that none of his appeals concerning the claims at issue herein was addressed on the merits at the Director's level of review. Rather, he argues the Court should allow his claims to proceed because (1) the appeals he filed that did not proceed past the informal level of review are exhausted; (2) Appeal #PBSP-D-05-02782 should be deemed exhausted even though it was screened out as untimely at the Director's level of review; and (3) Appeal # PBSP-D-06-00394 is exhausted because it was granted at the first level of review.

In reply, defendants again argue plaintiff's claims must be dismissed because he did not properly exhaust his administrative remedies.

In order to determine whether plaintiff's claims have been exhausted, the Court now reviews the appeals at issue.

    1.    <u>Informal Level Appeals</u>

Several appeals filed by plaintiff for purposes of challenging matters related to his indeterminate SHU classification never proceeded past the informal level of review because the appeals were screened out for procedural reasons. Relying on the Ninth Circuit case of <u>Ngo v. Woodford</u>, 403 F.3d 620 (9th Cir. 2005), plaintiff argues that the screened-out appeals satisfied the exhaustion requirement. In <u>Ngo</u>, the Ninth Circuit held the prisoner had completed all avenues of administrative review available to him as required by the PLRA when his appeal was deemed time-barred and no further level of appeal remained available in the administrative appeals process. See <u>Ngo</u>, 403 F.3d at 631 ("[T]he PLRA's exhaustion requirement does not bar subsequent judicial consideration of an exhausted administrative appeal that was denied on state procedural grounds."). As correctly noted by defendants, however, in <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006), the Supreme Court overruled the Ninth Circuit and held the exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." <u>Id.</u> at 84. Rather, the PLRA exhaustion requirement requires proper exhaustion: "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 90-91 (footnote omitted).

1    Here, plaintiff's appeals were screened out for procedural reasons at the informal level
2 of review and plaintiff did not subsequently pursue and receive a decision on the merits with
3 respect to any of those appeals. Accordingly, under Woodford, the appeals are unexhausted.

    2.    Appeal #PBSP-D-05-02782

5    Defendants argue plaintiff's Appeal #PBSP-D-05-02782, which appeal challenged the
6 constitutionality of plaintiff's indeterminate term in the SHU, is unexhausted because the
7 appeal was rejected at the Director's level of review due to plaintiff's failure to comply with
8 appeal time limits. Specifically, plaintiff did not comply with a prison regulation providing
9 that a prisoner must submit an appeal "within 15 working days of the event or decision being
10 appealed, or of receiving an unacceptable lower appeal level decision." CCR 3084.6(c).

11    The facts surrounding Appeal #PBSP-D-05-02782 are as follows. On September 15,
12 2005, plaintiff filed said appeal at the first level of review, claiming the ICC's decision to
13 sentence him to an indeterminate term in the SHU violated his rights to due process and to be
14 free from cruel and unusual punishment. (AC Ex. "Appeal #1" at 2.) The first level decision
15 denying the appeal on the merits was returned to plaintiff on December 2, 2005. (Id. at 3.)
16 On December 5, 2005, plaintiff filed the appeal at the second level of review. (Id.) The
17 second level decision denying the appeal on the merits was returned to plaintiff on February
18 6, 2006. (Id.)

19    On February 14, 2006, plaintiff placed a completed appeal form for third level review
20 in an envelope that he intended to mail to an attorney who was not representing plaintiff but
21 whose name plaintiff had found on the Internet, and who advertised that he would provide
22 prisoners with free copies on a one-time basis. (AC at 10, Ex. "Appeal #1" at 20.) Plaintiff
23 intended to send the appeal to the attorney with a request that the attorney make a copy of the
24 appeal and then forward the original to the Director's level of review in Sacramento. (Id.)
25 As plaintiff intended to send the envelope to an attorney, he labeled it as containing
26 confidential mail. (Ex. "Appeal #1" at 20.) Plaintiff addressed the envelope to plaintiff's
27 family, however. Because prison regulations prohibit mail sent to a family member to be
28 labeled confidential mail, the envelope and completed appeal form were confiscated by

7

1   prison officials and plaintiff was issued a rules violation report ("RVR"). (AC at 10, Ex.
2   "Appeal #1" at 19.) As a result, the appeal was retained by defendants pending plaintiff's
3   hearing on the RVR. (AC at 10.)
4       On February 22, 2006, while awaiting the RVR hearing, plaintiff sent a "Request for
5   Interview" to prison officials, stating the envelope had been misaddressed and that it
6   contained an appeal that needed to be forwarded to the Director's level before the fifteen-day
7   appeal deadline. (Ex. "Appeal #1 at 20-21.) Plaintiff asked that the mail be returned to him
8   in order that he could send it out by regular mail. (Id.) Additionally, in response to the RVR,
9   plaintiff wrote a statement explaining the mail had been misaddressed and asking that, upon
10  completion of the RVR proceedings, the completed appeal form be returned to him. (Id. at
11  20.) He also asked that he be provided with a statement that the appeal originally was sent
12  out on February 14, 2006, but had been held by prison officials due to mail complications.
13  (Id. at 21.)
14      On March 4, 2006, a hearing was held on the RVR. (Id. at 19.) Plaintiff was found
15  not guilty because his written statement in response to the RVR "show[ed] the possibility that
16  [he] did mistakenly address the envelope as 'confidential mail.'" (Id.) The appeal was
17  returned to plaintiff and, on March 16, 2006, he submitted it to the Director's level of
18  review. (AC at 10.) On May 15, 2006, the appeal was screened out at the Director's level of
19  review as untimely because it had not been submitted within fifteen days of the date on
20  which plaintiff received the second level decision. (Ex. "Appeal #1" at 18.)
21      Defendants argue the appeal is unexhausted because it was screened out as untimely.
22  Plaintiff does not dispute the appeal was untimely. Rather, he argues the appeal should be
23  deemed exhausted because it would have been timely but for the fact that prison officials
24  confiscated the appeal and did not return it to him until after the RVR hearing was
25  concluded.
26      As set forth above, in Woodford the Supreme Court made clear that only "proper
27  exhaustion," i.e., compliance with an agency's procedural rules and deadlines for filing
28  administrative appeals, will satisfy the PLRA's exhaustion requirement. 548 U.S. at 90-91.

While Woodford left open the possibility that proper exhaustion might not be required where prison administrators "devise procedural requirements that are designed to trap unwary prisoners and thus to defeat their claims," 548 U.S. at 102, the Court finds, for the following reasons, that no such circumstances occurred in the instant matter, and that plaintiff's failure to exhaust is not excused by the confiscation and retention of his appeal pending the conclusion of the RVR hearing.

      First, contrary to plaintiff's assertions, the Court cannot reasonably infer from the allegations in the AC and the documents attached thereto that the appeal plaintiff attempted to mail on February 14, 2006 would have arrived at the Director's level within the fifteen-day appeal deadline had it not been confiscated by prison officials. Specifically, no such inference can be drawn because plaintiff was not mailing the appeal directly to the Director's level. Rather, he was mailing the appeal to an attorney whose name plaintiff had gotten from the Internet, with a request that the attorney make a copy of the appeal for plaintiff and forward it to the Director in Sacramento. Thus, because timely receipt of the appeal at the Director's level of review was contingent upon factors other than plaintiff's simply placing the appeal in the mail on a date in advance of the fifteen-day deadline, the Court cannot find the appeal would have been timely filed even it had not been confiscated.

      Second, plaintiff's argument that the confiscation and retention of his appeal should excuse his failure to exhaust is without merit because plaintiff's inability to properly exhaust his appeal did not result from defendants' requiring plaintiff to comply with procedural requirements that "trapped" him and made it impossible for him to file a timely appeal. See Woodford, 548 U.S. at 102. As noted, plaintiff himself misaddressed the envelope in which he sent out his appeal and, as a result, the appeal was confiscated and plaintiff was charged with an RVR. Plaintiff does not contend prison officials did not have the authority to charge him with an RVR based on the labeling of the envelope addressed to his family as

9

1  "confidential,"[6] that the RVR hearing was not held in a timely manner in compliance with
2  prison regulations,[7] or that prison regulations prohibited prison officials from retaining the
3  subject-matter of the RVR, specifically, the mislabeled envelope and the appeal, until the
4  hearing was concluded.  Thus, although prison officials returned plaintiff's appeal to him
5  after the fifteen-day deadline for plaintiff to file his appeal at the Director's level of review
6  had passed, there is no indication they did so in an attempt to improperly interfere with
7  plaintiff's ability to file a timely appeal.  Rather, plaintiff was unable to file a timely appeal
8  because he made a mistake that led to a series of predictable procedural consequences.
9  Additionally, and contrary to plaintiff's assertions, the fact that plaintiff was found not guilty
10 of intentionally misaddressing the envelope does not alter such conclusion.

Based on the foregoing, the Court finds plaintiff did not properly exhaust his administrative remedies with respect to Appeal #PBSP-D-05-02782 and his failure to do so was not the result of procedural requirements designed to defeat plaintiff's ability to exhaust his claims.  Accordingly, the Court finds the appeal is unexhausted.

       3.     Appeal #PBSP-D-06-00394

On December 5, 2005, plaintiff filed an administrative appeal, Appeal #PBSP-D-06-00394, at the first level of review, asking that he be provided with a completed copy of the 114-D Administrative Segregation Unit Placement Notice (hereinafter "114-D form") issued by the ICC on September 14, 2005, the date the ICC determined plaintiff would be housed in the SHU for an indeterminate term.  In his appeal, plaintiff claimed he was entitled to such document because the 114-D form he had been provided on September 9, 2005, prior to the ICC hearing, did not state the ICC's reasons for the indeterminate sentence.  On March 17, 2006, the appeal was granted at the first level of review, as follows:

---

[6] CCR § 3141(2) provides that inmates may not use confidential correspondence for personal non-business correspondence, and that an inmate who does so may be subject to disciplinary action.  CCR § 3314(3)(F) provides that an inmate may be charged with an administrative rules violation for a mail violation that does not present a threat to facility security.

[7] CCR § 3320(b) provides that RVR charges shall be heard within thirty days of the inmate being provided with notice of the RVR.

10

> On March 14, 2006, CCII M. Pena gave you a copy of the CDC 114-D, you were issued on September 9, 2005, in preparation for your Pre-MERD [Minimum Eligible Release Date] committee and the corresponding CDC 128-G, Classification Chrono, from your Pre-MERD Institutional Classification Committee of September 14, 2005. You indicated that you thought you should have been issued another CDC 114-D, describing the reasons you were being retained in the Security Housing Unit. CCII Pena explained to you, that information was documented in the CDC 128G of September 14, 2005. A review of your Central File reveals that you have already filed an appeal on the action of the above referenced committee (PBSP-D-05-02782). It is also noted that you were previously issued a copy of your CDC 114-D, CDC 128G of September 14, 2005, and CSR endorsement CDC 128G of October 21, 2005, as you list them as attachments for your appeal.

(AC Ex. "Appeal #2" at 14.)

Thereafter, plaintiff attempted to appeal the first level response by filing a second level appeal in which he stated he was dissatisfied with the result because he still had not been provided with a completed 114-D form dated September 14, 2005. (AC at 19-20.) On April 11, 2006, the appeal was screened out at the second level of review on the procedural ground that the issue had been resolved at the previous level, as plaintiff had received what he had originally requested and the matter had been explained to him. (AC at 21, Ex. "Appeal #2" at 16.) Plaintiff did not appeal the second level decision screening out the appeal.

Defendants argue the appeal is not exhausted because it never proceeded past the first formal level of review. Plaintiff contends the appeal is exhausted because it was granted at the first level of review. Plaintiff's argument is without merit because his obligation to exhaust persisted as long as some administrative remedy remained available to him. See Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). In this case, even though the appeal was granted at the first level of review, plaintiff did not obtain the relief he requested; he therefore appealed the first level response. Thereafter, when the second level appeal was screened out because the appeal had been granted at the first level of review, administrative remedies still remained available to plaintiff by which he could attempt to obtain the relief he sought. Specifically, CCR § 3084.1(a) provides prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Additionally, the form used to screen out plaintiff's

11

1  appeal states that such decision can be appealed if the prisoner "can support an argument that
2  the [reason for screening out the appeal] is inaccurate." (AC Ex. "Appeal #2" at 16.)

3       As plaintiff did not, in connection with Appeal #PBSP-D-06-00394, obtain the relief
4  he seeks herein, and administrative remedies remained available to him by which to pursue
5  such relief, the grant of the appeal at the first level of review did not satisfy plaintiff's
6  obligation to exhaust his administrative remedies by continuing to the Director's level of
7  review.

8       In sum, for the foregoing reasons, the Court finds plaintiff failed to exhaust his
9  administrative remedies with respect to the claims raised in the AC. Accordingly,
10 defendants' motion to dismiss the AC due to plaintiff's failure to exhaust administrative
11 remedies will be granted.

12 D.    <u>Defendant Ater</u>

13      In its May 10, 2007 Order of Service, the Court directed the United States Marshal
14 ("Marshal") to serve seven defendants at PBSP, where plaintiff indicated they were located.
15 The Marshal successfully served six defendants, but returned the summons unexecuted as to
16 Counselor G. Ater ("Ater"). The unexecuted summons included a notation by the Marshal
17 that, according to the Litigation Coordinator at PBSP, Ater no longer works at PBSP and has
18 moved out of state to an unknown location. (<u>See</u> Docket No. 19.) Notice of the unexecuted
19 summons was mailed by the Marshal to plaintiff. (<u>Id.</u>) To date, Ater has not been served,
20 and plaintiff has not provided the Marshal with an address where Ater can be served.

21      It is apparent, however, that even though Ater has not been served, the claims against
22 him are subject to dismissal. Specifically, the allegations against Ater are the same as those
23 against the other defendants to this action, and there is no suggestion in the AC and exhibits
24 attached thereto, or in the briefs and exhibits filed in connection with the instant motion to
25 dismiss, that the analysis of the claims against Ater differs from the analysis of the claims
26 against the other defendants. Cf. <u>Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery</u>, 44
27 F.3d 800, 803 (9th Cir.1995) (affirming grant of summary judgment in favor of nonappearing
28 defendant where plaintiff, in response to summary judgment motion filed by defendant who

had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant). As the Court has found plaintiff did not exhaust administrative remedies with respect to his claims against the other defendants herein, plaintiff cannot prevail on his claims against Ater. Accordingly, the claims against Ater will be dismissed as unexhausted.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. The motion to dismiss the amended complaint (Docket No. 27) is hereby GRANTED, and the above-titled action is hereby DISMISSED as to all defendants. The dismissal is without prejudice to plaintiff's refiling his claims after all available administrative remedies have been exhausted.

2. Plaintiff's motion to set time limits to file objections (Docket No. 40.) is hereby DENIED.

3. Defendant Kirkland's motion to join in the motion to dismiss (Docket No. 42) is hereby GRANTED .

This order terminates Docket Nos. 27, 40 and 42.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: August 26, 2008

_____
MAXINE M. CHESNEY
United States District Judge